**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

WHITNEY REHR,

                Plaintiff,

v.

QUIKTRIP CORPORATION,

                Defendant.

                Case No. 15-2605-DDC-KGG

<u>**MEMORANDUM AND ORDER**</u>

This is a negligence action.  Plaintiff Whitney Rehr alleges a "slip and fall" at a store owned and operated by Defendant QuikTrip Corporation.  This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 39).  Plaintiff has filed a Response and Memorandum in Opposition to defendant's motion (Doc. 42), and defendant has submitted a Reply (Doc. 47).  After considering the parties' arguments, the Court denies defendant's motion, and explains why below.

    **I.**        **Uncontroverted Facts**

The facts of this case are largely uncontroverted.  Indeed, the parties stipulated to many of the facts recited below in the Pretrial Order (Doc. 38).  The remaining facts either are uncontroverted, or where controverted, stated in the light most favorable to plaintiff, the party opposing summary judgment.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

On Saturday, November 30, 2013, plaintiff was driving an automobile westbound on I-70.  She was returning home to Denver, Colorado after visiting St. Louis, Missouri for the Thanksgiving holiday.  Two passengers accompanied plaintiff:  Hope Bertsch (riding in the front seat of the car) and plaintiff's two-year old son (in the backseat, in a child's car seat).

During the journey, plaintiff exited I-70 in western Wyandotte County, and drove north to a QuikTrip convenience store located at 389 N. 130th Street in Bonner Springs, Kansas.  As she drove into the QuikTrip parking lot, she saw a QuikTrip employee outside of the store using a power washer on the sidewalk and parking lot area near the front sidewalk.  The QuikTrip employee was located near the southwest corner of the store.  Plaintiff saw the QuikTrip employee spraying water from the power washer.  Also, she observed the employee spraying the area just off of the curb, in between the parking lot and the sidewalk.  She could not differentiate, however, whether the employee was spraying water on the sidewalk, parking lot, or both.

Plaintiff's passenger, Ms. Bertsch, also saw the QuikTrip employee outside of the store using a power washer on the sidewalk and parking lot area near the front of the sidewalk.  As plaintiff pulled into the parking lot, Ms. Bertsch commented, "I wonder why he's doing that now.  You know it's a hazard."

Plaintiff pulled the car into a parking space at the front of the QuikTrip store.  The parking space was left (or north) of the store's west-facing front entrance.  Plaintiff parked the car about three parking spaces to the north of the store's entrance.  After pulling into the parking space, plaintiff did not give the QuikTrip employee another look or glance in his direction. Plaintiff cannot recall if the parking space where she parked was wet or dry when she parked the car.  Plaintiff got out of the door on the driver's side of her car and walked from her car across the parking lot (heading east), turned right onto the storefront sidewalk (heading south), and then turned left to enter the store through the store's front entrance (heading east).

Ms. Bertsch stayed in the front passenger seat while plaintiff went into the store to purchase several items.  After making her purchases, plaintiff exited the store's front doors (heading west), turned right onto the sidewalk (heading north), walked past the front of her car,

and turned left (heading west) walking alongside her car's driver's side.  When she left the store,

plaintiff noticed that the sidewalk and parking spaces in front of the store were wet.  After

plaintiff stepped off the sidewalk curb and onto the parking lot surface along the driver's side of

her car, she took a few steps on the parking lot surface.  Then she fell, striking her left knee on

the parking lot pavement and sustaining injury.

   After plaintiff fell, she did not look at the area to determine if water, oil, another

automotive product, or anything else had caused her fall.  She never saw any oil or automotive

product on the surface of the parking lot either before or after her fall.  She also did not see any

scuff marks, skid marks, or foot prints on the pavement.  And she never noticed any residue on

her shoes.  But plaintiff did see an oil spot on the clothing of her left knee that was the shape of a

circle and about the size of her left knee cap.  The spot consisted of both water and grease, oil, or

some other automotive product.  Plaintiff does not know of any other place where her left knee

came into contact with oil, grease, or an automotive product, other than when her knee hit the

parking lot pavement during her fall.  At the time of plaintiff's fall, no ice was on the pavement

because the temperature was above freezing.

   Ms. Bertsch did not see plaintiff slip or fall, and does not know specifically where

plaintiff fell.  But, after the fall, she first saw plaintiff sitting on the ground right next to the

driver's side door of the car.  And, on the ground by the driver's side of the car, she personally

observed a patch of oil with water beading up on it.  This oil patch had a rainbow hue.  Ms.

Bertsch completed an incident report in the QuikTrip store.  Before completing the report, Ms.

Bertsch never asked plaintiff to explain how the slip and fall occurred.  But she wrote on the

incident report that plaintiff "slipped on wet oil in [the] parking lot as [she] stepped off [the] curb

to get into [the] car."  Doc. 43-6 at 2.  Ms. Bertsch later completed a written statement, and it

states that plaintiff told her that she "had slipped on the wet pavement and hurt her knee."  Doc. 48-3.

The QuikTrip Second Assistant Manager on duty when plaintiff fell was Kindra Snelling.  The QuikTrip employee using the power washer on the sidewalk and parking lot area near the front of the store was Joe Lentz.  Ms. Snelling had instructed Mr. Lentz to power wash the sidewalk and parking spaces near the front of the store on November 30, 2013.  At all relevant times, Ms. Snelling and Mr. Lentz were acting in the course and scope of their employment as QuikTrip employees.

Ms. Snelling testified that she knew, before plaintiff's fall, that cars coming into the QuikTrip parking lot frequently leak oil, gas, or washer fluid.  Because of this, QuikTrip employees power wash the parking lot twice a week.  Ms. Snelling also testified that employees should apply a degreasing agent to the pavement before power washing the sidewalks and parking lots.  Ms. Snelling does not know if Mr. Lentz used a degreasing agent the day of plaintiff's fall, and Mr. Lentz does not recall whether he applied degreasing agent before power washing the sidewalks and parking lot on November 30, 2013.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When it applies this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'"  *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

Summary judgment is not a "disfavored procedural shortcut."  *Celotex*, 477 U.S. at 327.  Rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1).

### III.    Analysis

Plaintiff asserts a negligence claim under Kansas law against QuikTrip.  Plaintiff claims that defendant breached its duty of care because it permitted conditions to exist on its property that created an increased risk of injury, like the injury plaintiff sustained on November 30, 2013. Specifically, plaintiff alleges that defendant failed to warn her about the presence of wet oil and/or grease residue in the parking lot space where she slipped and fell.[1]

Defendant argues that it is entitled to summary judgment on the negligence claim because it had no duty to warn plaintiff of conditions that are known or obvious.  Specifically, defendant argues that the uncontroverted facts establish that:  (1) plaintiff saw a QuikTrip employee power washing the sidewalks and parking lot when she entered the parking lot, and (2) plaintiff was aware that the pavement was wet as she exited the store.  Thus, defendant argues, it had no duty to warn plaintiff because she already knew about the pavement's wet conditions before she fell.

As explained in more detail below, the Court cannot resolve this dispute at summary judgment.  Plaintiff does not claim that she fell just because of the wet conditions that she observed on the sidewalks and parking lot.  Instead, she asserts that she fell on wet oil and/or grease that was not readily apparent or observable to her.  Viewing all evidence in the light most favorable to plaintiff (as the Court must when considering defendant's summary judgment motion), a reasonable jury could conclude that wet oil and/or grease caused plaintiff to fall.  And a reasonable jury also could conclude that defendant had a duty to warn plaintiff about the presence of wet oil and/or grease on the pavement because it was not known and obvious. Consequently, the Court denies defendant's motion for summary judgment.

---

[1]    Plaintiff also alleges that:  (1) defendant failed to follow its policies and procedures for power washing sidewalks and the parking lot areas; and (2) defendant failed to train or train adequately Mr. Lentz and/or Ms. Snelling on its power washing policies and procedures.  *See* Pretrial Order at ¶ 4.a. (Doc. 38 at 8–9).

### A.  Kansas Law Governing Negligence Claims

In Kansas, a negligence claim requires:  (1) the existence of a duty, (2) breach of that duty, (3) injury, and (4) a causal connection between the duty breached and the injury sustained. *Smith v. Kan. Gas Serv. Co.*, 169 P.3d 1052, 1057 (Kan. 2007) (quoting *Schmidt v. HTG, Inc.*, 961 P.2d 677, 693 (Kan. 1998)).  As explained above, defendant argues that the Court should grant summary judgment against plaintiff's negligence claim because, as a matter of law, plaintiff cannot establish the first element of a negligence claim—the existence of a duty. Defendant contends that the summary judgment facts establish that it had no duty to warn plaintiff of conditions that were readily apparent or observable.

In a general sense, negligence claims present questions of fact for the jury to determine, not legal questions for the Court to decide.  *Elstun v. Spangles, Inc.*, 217 P.3d 450, 453 (Kan. 2009) (citation omitted).  But the question whether a duty of care exists is a legal determination for the Court.  *Id.* (citing *Nero v. Kan. State Univ.*, 861 P.2d 768, 770 Syl. ¶ 1 (Kan. 1993)); *see also Smith*, 169 P.3d at 1057 (explaining that "[w]hether a duty exists is a question of law" (citation and internal quotation marks omitted)).  If the undisputed facts establish that a defendant did not have a duty to act in a certain way toward a plaintiff, the Court may grant summary judgment against plaintiff's negligence claim because, where no duty exists, defendant is not liable for negligence.  *Elstun*, 217 P.3d at 453 (citing *Sepulveda v. Duckwall–Alco Stores, Inc.*, 708 P.2d 171, 173–74 (1985)).

The parties here agree that plaintiff was defendant's business invitee when she fell in the parking lot.  In Kansas, "'[a]n invitee is one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both inviter and invitee.'"  *Gould v. Taco Bell*, 722 P.2d

511, 514 (Kan. 1986) (quoting *Gerchberg v. Loney*, 576 P.2d 593, 596 (Kan. 1978)).  The

possessor of the premises owes its invitee "an affirmative duty to exercise reasonable or ordinary

care for [the invitee's] safety." *Id.*  That duty includes an obligation to warn the invitee of any

danger that the owner of the premises might reasonably anticipate.  *Id.*

     The Kansas Supreme Court has described this duty of care that a proprietor of a store

owes to its patrons in this fashion:

> The proprietor of a store, shop, or other place of business kept open for public
> patronage is not under an insurer's liability as to the safety of persons who come
> thereon, but he does owe to customers who enter the premises, while the
> establishment is open for business, the duty of exercising ordinary care to keep
> the aisles, passageways and such other parts of the premises as are ordinarily used
> by customers in transacting business in a reasonably safe condition for use by the
> persons thus entering, and to warn them of dangerous conditions upon the
> premises which are known, or which reasonably should be known, to him but not
> to them.

*Thompson v. Beard & Gabelman*, 216 P.2d 798, 800 (Kan. 1950) (citing 38 Am. Jur. 791); *see*

*also Lyon v. Hardee's Food Sys., Inc.*, 824 P.2d 198, 204 (Kan. 1992).  As the Kansas Supreme

Court explains in this passage, the owner of a business need not insure against all accidents.  *See*

*Thompson*, 216 P.2d at 800; *see also Smith v. Locke Supply Co.*, No. 98-2495-JWL, 1999 WL

1423070, at *2 (D. Kan. Dec. 21, 1999) (citation omitted).   Instead, Kansas law requires the

owner of a business "to exercise reasonable care to keep the premises safe and to warn [its]

invitee of dangers which the owner knows of by exercising reasonable care."  *Smith*, 1999 WL

1423070, at *2 (citing *Sewell v. Wal–Mart, Inc.*, No. 91-4053-S, 1992 WL 198874, at *4 (D.

Kan. Aug. 5, 1992)).

     Because, plaintiff here was a business invitee, defendant owed her a duty to keep the

parking lot and sidewalks outside of its store in a reasonably safe condition.  But, defendant had

no duty to protect plaintiff from dangers that are readily apparent and observable.  *See Smith*,

1999 WL 1423070, at *4.  The Kansas Supreme Court has adopted Restatement (Second) of

Torts § 343A, and it provides:  "'[a] possessor of land is not liable to his invitees for physical

harm caused to them by any activity or condition on the land whose danger is known or obvious

to them, unless the possessor should anticipate the harm despite such knowledge or

obviousness.'"  *Scales v. St. Louis-San Francisco Ry. Co.*, 582 P.2d 300, 306 (Kan. 1978)

(quoting Restatement (Second) of Torts § 343A(1)).[2]  "Therefore, the invitee assumes all normal

or ordinary risks attendant upon the use of the premises, and the owner is not liable for an injury

to an invitee resulting from a danger which was obvious or should have been observed in the

exercise of ordinary care."  *Smith*, 1999 WL 1423070, at *4 (citing *Brown v. Wal–Mart Stores,

Inc.*, 11 F.3d 1559, 1563 (10th Cir. 1993)).

       Whether a danger is known and obvious is a question of fact that, in most instances, a

jury must decide.  *See Sandage v. Wal-Mart Stores, Inc.*, No. 14-CV-2013-JAR, 2015 WL

519199, at *3 (D. Kan. Feb. 9, 2015) (citations omitted).  But, on defendant's summary judgment

motion, the Court must decide whether a reasonable jury could find from the undisputed facts

that the conditions of the parking lot and sidewalks outside of defendant's store did not present a

known and obvious danger.  *See id.*  If the Court can conclude as a matter of law that the danger

was known and obvious, then defendant had no duty to warn plaintiff of that danger under

Kansas law.  The Court turns to that question in the section below.

### B.  Did Defendant Owe a Duty of Care to Plaintiff Under Kansas Law?

       Defendant asserts that it owed no duty to plaintiff because it need not warn her of the

known and obvious danger posed by power washing the parking lot and sidewalks outside

---

[2]    The comments to the Restatement explain:  "The word 'known' denotes not only knowledge of
the existence of the condition or activity itself, but also appreciation of the danger it involves."
Restatement (Second) of Torts § 343A(1) cmt. b.  And "'[o]bvious' means that both the condition and the
risk are apparent to and would be recognized by a reasonable man, in the position of the visitor,
exercising ordinary perception, intelligence, and judgment."  *Id.*

defendant's store.  Defendant relies on *Smith v. Locke Supply Co.*, No. 98-2495-JWL, 1999 WL 1423070 (D. Kan. Dec. 21, 1999), arguing that the summary judgment facts presented here are like those presented in *Smith*.

Defendant's argument has some merit because *Smith* also involved a slip and fall at store defendant owned and operated.  *Id.* at *1.  The plaintiff in *Smith* claimed he entered defendant's store to use the telephone.[3]  *Id.*  After he concluded his call, plaintiff turned, took half a step, and, his claim theorized, he tripped over a box that was directly behind him.  *Id.*  Plaintiff asserted that before he began his phone call, the only boxes he had seen were stacked against a vending machine.  *Id.*  Defendant responded that no admissible evidence could support an inference of a box located behind plaintiff and, in fact, one of defendant's employees saw plaintiff trip over his own feet.  *Id.*  Defendant also relied on plaintiff's concession that, before he fell, he had seen boxes stacked against a vending machine in the store.  *Id.*  This observation, defendant contended, made any danger presented by stacked boxes inside the store a known and obvious one.  *Id.*

Judge Lungstrum granted defendant's motion for summary judgment against the negligence claim presented in *Smith*.  *Id.* at *3–4.  The rationale supporting this holding grouped the boxes at issue in two categories.  First, for the box, "directly behind" plaintiff that, according to plaintiff's claim, he had tripped over, *Smith* ruled that plaintiff had not adduced any admissible evidence that such a box ever existed.  *Id.* at *3.  It also rejected plaintiff's theory that the existence of boxes elsewhere in the store, *i.e.*, against the vending machine, provided a sufficient basis to support an inference that a box was locate behind plaintiff.  *Id.*  Second, *Smith* ruled that plaintiff could not make a submissible case by relying on the boxes stacked against the

---

[3]      It appears that "the telephone" in *Smith* was a coin-operated landline phone commonly found in America in the late 1990's.

vending machine. *Id.* at *4. Plaintiff's concession that he saw those boxes before he tripped made any risk presented by those boxes open and obvious and freed defendant from any duty to warn plaintiff about them. *Id.*

Defendant's argument that *Smith* calls for summary judgment here is not a persuasive one because the material facts in this case are different. Here, plaintiff does not rely on the existence of a wet parking lot. Instead, her negligence theory asserts that wet oil and/or grease present in the parking lot caused her to slip and fall. And unlike the *Smith* plaintiff, she has marshaled admissible evidence that oil and/or grease existed in the area where she fell. Plaintiff testified that after her fall, she had an oil spot on her left knee that did not exist before her fall. Also, Ms. Bertsch, plaintiff's travelling companion, testified that she saw an oil spot with beaded water and a rainbow hue near where she saw plaintiff on the ground after plaintiff slipped and fell.

In the end, the jury may or may not accredit this evidence; and it may conclude that any such oil and/or grease did not cause plaintiff to slip, fall, and injury herself. But plaintiff has come forward with sufficient evidence to support a finding in her favor on these important issues. The summary judgment standard simply does not permit the Court to decide these fact questions.[4]

---

[4]     Defendant also argues that the Court cannot consider Ms. Bertsch's testimony about what she saw in the parking lot because she did not see plaintiff fall. Ms. Bertsch testified, however, about the condition of the parking lot in the vicinity where plaintiff fell. This suffices under our rules of evidence. *See* Fed. R. Evid. 401 (defining relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action").

And defendant accuses Ms. Bertsch of manufacturing her testimony to create summary judgment issues. Defendant points to a written statement completed by Ms. Bertsch on February 3, 2014, some two months after plaintiff's fall. In that statement, Ms. Bertsch wrote that plaintiff slipped on wet pavement, not an oil spot. *See* Doc. 48-3. But Ms. Bertsch wrote in the incident report on the day of plaintiff's fall that she slipped on wet oil in the parking lot. *See* Doc. 43-6 at 2. Ms. Bertsch also testified in her deposition that she observed an oil spot on the ground by the driver's side of the car, in close proximity to where plaintiff says that she fell. Doc. 48-2 at 2, 6–8. The Court cannot judge the credibility of Ms. Bertsch's various statements at summary judgment. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

Viewing all the facts in the light most favorable to plaintiff, they demonstrate that plaintiff's theory of causation is not just speculation. Instead, these facts could allow a reasonable jury to infer that plaintiff slipped on an oil spot. And, a reasonable jury also could conclude that the oil spot was an unknown danger and that defendant failed to warn plaintiff of that danger. The Court thus rejects defendant's argument that it owed no duty to plaintiff as a matter of law.

Because plaintiff alleges that an unknown condition caused her to slip and fall, the facts here resemble those presented in *Sandage v. Wal-Mart Stores, Inc.*, No. 14-CV-2013-JAR, 2015 WL 519199 (D. Kan. Feb. 9, 2015). *Sandage* involved a slip and fall at a Wal-Mart store. *Id.* at *1. While plaintiff was shopping at defendant's store, she saw a puddle of water on the floor, avoided slipping on that puddle, but then slipped on a second puddle of water that she never saw. *Id.* Defendant moved for summary judgment, arguing that plaintiff knew of the water on the floor, and defendant thus owed no duty to protect her from an open and obvious danger. *Id.* at *1, 3.

Judge Robinson disagreed. *Id.* at *3. The facts viewed in plaintiff's favor showed that plaintiff knew about the first puddle, but she did not see the second puddle that, she claimed, caused her to slip and fall. *Id.* These facts permitted a reasonable jury to conclude that plaintiff's knowledge of the first puddle did not put her on notice of the danger of a second puddle. *Id.* at *5. And, Judge Robinson concluded that a reasonable jury also could find that the second puddle, which had caused plaintiff to slip and fall, was not an open and obvious danger. *Id.* at *5. For that reason, Judge Robinson held that genuine issues of material fact existed about

---

242, 255 (1986) (explaining that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" when deciding motions for summary judgment). Instead, defendant's arguments about the alleged inconsistency in Ms. Bertsch's statements are more appropriate for cross-examination, not summary judgment.

whether the condition that caused plaintiff's fall was a known and obvious danger, and those issues precluded summary judgment for defendant. *Id*.

Likewise, the facts of this case, when viewed in plaintiff's favor, preclude a summary judgment finding. A reasonable jury could conclude from the summary judgment facts that defendant failed to warn plaintiff of an unknown danger in its parking lot—that is, wet oil and/or grease existed, was unobserved, and was not readily apparent to plaintiff. The Court recognizes that a reasonable jury also could reach the opposite conclusion from the summary judgment facts. But the Court cannot resolve the matter on summary judgment because it presents genuine issues of material fact. The Court thus denies defendant's summary judgment motion.

## IV.   Conclusion

For the reasons explained above, the Court concludes that genuine issues of material fact preclude summary judgment for defendant. Consequently, the Court denies defendant's summary judgment motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 39) is denied.

**IT IS SO ORDERED.**

**Dated this 28th day of April, 2016, at Topeka, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**